UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| HEATHER M. COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:15cv3 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income and Disability Insurance Benefits, 42 U.S.C. § 401 *et seq*. Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 29,

2012, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: hypertension/high blood pressure, history of cerebrovascular accident in 2005, major depressive disorder, migraines that are not intractable, Addison's disease, and Lupus anticoagulant (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) in that the claimant is able to lift, carry, push and pull up to ten pounds occasionally and less than ten pounds frequently. The claimant would be able to stand and walk, with normal breaks, for approximately two hours per eight-hour workday and would be able to sit, with normal breaks, for approximately six hours per eight-hour workday. However, the claimant would be limited to only occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, and only occasionally balancing, stooping, crouching, kneeling, and crawling. The claimant should avoid all exposure to unprotected heights, the operation of motor vehicles, and the use of dangerous machinery. Further, the claimant would require work in a low stress job, which is defined as having only occasional decision making required and only occasional changes in the work setting. While the claimant would be unable to engage in complex or detailed tasks, she would be able to perform simple, routine, and repetitive tasks, consistent with unskilled work, and could sustain such work and attend to task throughout the workday. The claimant would be limited to superficial interaction with co-workers, supervisors, and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. The claimant would be able to tolerate contact with supervisors involving necessary instruction.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on September 24, 1986 and was 25 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability

> because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 29, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 11-24)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on August 24, 2015. On November 30, 2015, the defendant filed a memorandum in support of the Commissioner's decision. The Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops

>the inquiry and leads to a determination that the claimant is not
>disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) alleging disability since January 26, 2012. The claim was denied initially and upon reconsideration. On May 22, 2013, ALJ Maryanne Bright convened a hearing, and on September 13, 2013, ALJ Bright issued a decision finding that Plaintiff was not disabled. On November 10, 2014, the Appeals Council affirmed ALJ Bright's finding that Plaintiff was not disabled .

Born in September 1986, Plaintiff was 25 years old as of the alleged onset date. She had at least a high school education. In the 15 year look back period, she worked as a Personal Care Aide which is classified as a semi-skilled job with a medium exertional level.

Plaintiff suffers primarily from Antiphospholipid Antibody Syndrome (APS) and Systemic Lupus Erythematosus (SLE). She also alleges she suffers/suffered from a multitude of other medical problems, most of which are probably secondarily or tertiarily related to APS and SLE; including, hypertension, central nervous system vasculitis, deep vein thrombosis, cerebrovascular accident/cortical based stroke with frontoparietal encephalomalacia and gliosis, renal infarct/renal insufficiency, Addison Disease/adrenal insufficiency, and high parathyroid hormone/hypocalcemia. After her strokes, Plaintiff also suffered from epilepsy/seizures, headaches, memory loss, and major depressive disorder. She also experienced episodes of

syncope/orthostatic hypotension, Raynaud's phenomenon, hypomagnesemia, and normocytic anemia. Additionally, Plaintiff is obese and has erosive gastritis and asthma.

In support of remand, Plaintiff first argues that the ALJ improperly overemphasized daily activities. The Seventh Circuit has repeatedly cautioned that a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir.2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir.2005); An ALJ cannot disregard a claimant's limitations in performing household activities. *Moss v. Astrue*, 555 F.3d 556 (2009); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir.2006).

Plaintiff claims that the ALJ's discussion of her daily activities ignores that there was a worsening of her conditions from January 2012 through May 2013. Specifically, her headache frequency increased and she required hospitalization and intravenous stress doses of steroids. By the time of the hearing, she could only do household activities with the extensive help of her mother and father.

Plaintiff argues that the ALJ glosses over the fact that Plaintiff accomplished her daily goals by interspersing rest periods with periods of low exertional activity. Plaintiff states that this pattern is consistent with her medical conditions, especially the fatigue problems associated with Addison Disease, SLE, and APS.

However, as the Commissioner points out, the ALJ reasonably found that Plaintiff's subjective statements were not entirely credible (Tr. 15). The ALJ took various factors into consideration when evaluating Plaintiff's credibility, including the objective medical evidence,

Plaintiff's treatment history, her activities of daily living, and the other factors set forth in the regulations and SSR 96-7p (Tr. 9-24). *See* 61 Fed. Reg. 34,483-34,488 (July 2, 1996). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

When discussing the evidence of record, the ALJ reasonably pointed out that Plaintiff performed a range of activities during the relevant period. In May 2012, during a physical consultative examination, Plaintiff reported that she could perform housework, do laundry, shop for groceries, and complete personal grooming activities (Tr. 16, 305). During her psychological consultative examination, Plaintiff again reported that she could complete personal hygiene on a daily basis, do laundry, prepare simple meals, and manage her own money (Tr. 21, 309). Contrary to Plaintiff's contention, the ALJ did not overemphasize or equate Plaintiff's activities to full-time work. She properly considered this evidence when assessing her credibility. *See* 20 C.F.R. § 416.929(c)(3); Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (stating that the adjudicator may consider evidence of an individual's daily activities when assessing credibility).

Plaintiff also asserts that her ability to perform activities of daily living worsened from January 2012 to May 2013. Plaintiff made the above statements to the consultative examiners in May 2012, four months after January 2012. During the hearing in May 2013, Plaintiff's testimony did not show a significant decrease in her ability to perform activities of daily living compared to her May 2012 statements. Plaintiff testified that she performed household chores during her good days, washed dishes every now and then, and didn't really cook besides preparing "a sandwich or something" (Tr. 51). She stated that her parents did not have a washer and dryer at their house so

7

they would do her laundry for her if she did not feel good (Tr. 51). The primary difference between Plaintiff's situation prior to January 2012 and after January 2012 was that she went from living with her boyfriend to living with her parents (Tr. 51-52).

The Plaintiff further contends that the ALJ erred in not incorporating in the hypothetical and RFC the limiting effects related to her headache impairment and related to the anticoagulation treatment. Again, however, as the Commissioner notes, the ALJ did not have to include limitations related to Plaintiff's headaches and anticoagulation treatment that were not credible and not supported by the record in her residual functional capacity assessment and hypothetical question. An "ALJ is required only to incorporate into h[er] hypothetical question those impairments and limitations that [s]he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Regarding her headaches, Plaintiff complained that light and sound triggered her headaches. The ALJ discussed Plaintiff's reported headaches at length (Tr. 14-22). The ALJ noted that Plaintiff reported mild headaches in April and July of 2012 (Tr. 16-17). The ALJ also noted that a July MRI showed chronic ischemic lesions in Plaintiff's right parietal lobe in the anterior right caudate nucleus; however, her intracranial vasculature was grossly intact and there was no extracranial stenosis or dissection (Tr. 17, 395-96). A three-day EEG study was normal during the awake, drowsiness, and sleep portions of the study with no epileptiform activity and no clinical events (Tr. 17-18, 587). Plaintiff continued to report headaches through December 2012 (Tr. 18-19). The ALJ noted that her headaches improved with medication (Tr. 19, 488-89, 491, 493, 495). She also reported having a headache in April 2013, but diagnostic imaging of her head was negative (Tr. 19-20, 378). Additionally, Plaintiff did not follow her prescribed treatment and take her medications regularly during the entire relevant period (Tr. 15,

8

488-89, 498-99). As the ALJ's decision reflects, she analyzed the relevant medical evidence and reasonably determined that Plaintiff's headaches were not as debilitating as she claimed, and the medical documentation noted that they improved with medication.

Further, there is no evidence that light and sound were triggers for Plaintiff's headaches. Importantly, despite her complaints, no physician found that Plaintiff's headaches were triggered by light and sound and did not identify any such restrictions. Likewise, despite Plaintiff's claim that she could not use sharp tools or objects due to her anticoagulation treatment, no physician indicated such a functional limitation.

In sum, the ALJ reasonably considered the entire case record in her credibility analysis, ultimately concluding that Plaintiff's pain or its impact on her functionality was not as severe as she alleged. The ALJ did, however, credit Plaintiff's allegations of increased pain at least to some extent because she limited Plaintiff to a restricted range of sedentary work (Tr. 14).

Lastly, Plaintiff asserts that the ALJ failed to build an accurate and logical bridge between the evidence of impairments, the hypothetical, and the RFC. When making her decision, the ALJ must build a logical bridge from the evidence to her conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In doing so, the ALJ must "connect the dots" between the claimant's impairments – as supported by substantial evidence in the record – and the residual functional capacity finding. *Young v. Barnhart*, 362 F.3d 995, 1002-03 (7th Cir. 2004). In the present case, the ALJ explained that, in making her residual functional capacity finding, she considered the objective medical evidence, the medial opinion evidence, the state agency opinions, and Plaintiff's allegations (Tr. 14, 22).

The ALJ found that Plaintiff's impairments limited her to a range of sedentary work with

the following restrictions: occasional climbing ramps, stairs, ladders, ropes, or scaffolds, and occasional balancing, stooping, crouching, kneeling, and crawling; no exposure to unprotected heights, operation of motor vehicles, and use of dangerous machinery; low-stress work defined as having only occasional decision making and occasional changes in the work setting; no complex or detailed tasks, but could perform simple, routine, and repetitive tasks consistent with unskilled work, and could sustain such work and attend to task throughout the workday; superficial interaction with coworkers, supervisors, and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues, but would be able to tolerate contact with supervisors involving necessary instruction (Tr. 14).

The ALJ found that Plaintiff would be able to stand and walk, with normal breaks, for approximately two hours per eight-hour workday and would be able to sit with normal breaks for approximately six hours per eight-hour workday (Tr. 14). The ALJ reached this residual functional capacity finding by weighing the record evidence as a whole, including the opinions and findings of the treating, examining, and non-examining physicians (Tr. 9-24).

Plaintiff objects to the ALJ's residual functional capacity finding, arguing that the ALJ's limitation to occasional climbing of ladders, ropes, and scaffolds is inconsistent with her seizure, syncope, and hypotension impairments. She specifically argues that such activities could lead to a fall or serious bleeding episodes. Additionally, Plaintiff asserts that "occasional" means an individual could spend a third of the workday climbing ladders, ropes, and scaffolds. As the Commissioner points out, however, this argument is illogical because the sedentary exertional level dictates that approximately 6 hours be spent sitting.

Additionally, Plaintiff cites no evidence or authority to support her argument. Significantly, no physician of record found that she could never climb ladders, ropes, or scaffolds. Further, the state agency physician indicated that she could perform sedentary work as well as occasional climbing of ladders, ropes, and scaffolds (Tr. 331). A second state agency physician affirmed this opinion as written (Tr. 347).

Plaintiff's argument that the ALJ opined that she could spend a third of the workday climbing ladders, ropes and scaffolds is erroneous and unsupported. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a). SSR 83-10 provides:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

1983 WL 31251, *5. Thus, an individual limited to sedentary work requiring sitting approximately 6 hours of an 8-hour workday, could be on her feet "very little up to one-third of the time." This does not equate with spending two or mor hours climbing ladders, ropes and scaffolds.

An ALJ is directed to call upon a vocational expert in cases when the claimant, as in this case, has a combination of both exertional and nonexertional limitations. *See* SSR 83-14, 1983 WL 31254, *4. In the present case, because Plaintiff had a combination of exertional and nonexertional limitations, the ALJ consulted with a vocational expert, who identified a significant number of sedentary jobs in the national economy that an individual with Plaintiff's specific

11

functional limitations could perform (Tr. 23, 70-71). Accordingly, the ALJ appropriately relied on the vocational expert testimony that Plaintiff could perform the sedentary occupations that existed in significant numbers in the national economy.

In any event, Plaintiff's argument is irrelevant because none of the three jobs that the vocational expert identified require climbing of any type. *See Dictionary of Occupational Titles (DOT)* No. 713.687-026, Optical Final Assembler; DOT No. 739.687-082, Table Worker; DOT No. 209.587-010, Addresser (all indicating "Climbing: Not Present - Activity or condition does not exist"). Therefore, to the extent Plaintiff argues she could not perform climbing of ladders, ropes, and scaffolds, the Commissioner still met her burden at step five because Plaintiff could perform the occupations identified by the vocational expert, which did not require any climbing.

Plaintiff also contends that the ALJ erred by not including a limitation restricting the use of sharp objects or tools because a puncture from such items could lead to "a life threatening bleeding episode". Despite Plaintiff's testimony that she was advised not to shave her legs with a razor or use knives due to her anti-coagulant treatment (Tr. 49), there is no medical source statement from a physician of record precluding Plaintiff from working in the presence of sharp objects. Nor did any of the state agency physicians indicate that Plaintiff had such a limitation (Tr. 329-36, 347).

There is no evidence that individuals receiving anti-coagulant therapy are isolated from all potential injury. Clearly, even if they do not work outside their homes, such persons encounter numerous hazards in the course of their daily lives, from kitchen knives to shaving razors. Hazards are also present in the workplace; some are acceptable risks for those taking anticoagulant medication, and some are not. With the exception of the table worker position, the

vocational expert did not identify hazardous jobs that would result in a high probability of skin injuries to Plaintiff; rather, he identified work such as an optical final assembler and an addresser, that do not involve using sharp instruments (such as knives, razors, or scissors), and are reasonably safe and an acceptable risk. The ALJ reasonably relied on that testimony. Therefore, substantial evidence supported the ALJ's determination.

Based on the above-mentioned evidence, the ALJ adequately articulated her reasoning for her findings, and built a "logical bridge" from the evidence to her conclusion, and "connected the dots" between Plaintiff's impairments and her functional capacity finding. *See Haynes*, 416 F.3d at 626; *Young*, 362 F.3d at 1002-03.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: February 8, 2016.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court